UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OSCAR LEE OLIVE, IV, | CASE NO. C20-0356JLR |
| Plaintiff, | ORDER |
| v. | |
| HAYLEY MARIE ROBINSON, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is *pro se* Plaintiff Oscar Lee Olive, IV's motion for entry of

default judgment against *pro se* Defendant Hayley Marie Robinson pursuant to Federal

Rule of Civil Procedure 55(b)(2) and Local Rule 55(b)(2).  (Mot. (Dkt. # 42).)  Ms.

Robinson did not file a response to the motion.  (*See generally* Dkt.)  The court has

considered the motion, the declarations filed in support of the motion, the balance of the

record, and the applicable law.  Being fully advised, the court GRANTS IN PART Mr.

Olive's motion.

## II.    BACKGROUND

Mr. Olive initiated this action against the Ms. Robinson on March 4, 2020, alleging that Ms. Robinson published defamatory statements about him on her website, https://irelandrosemarie.wordpress.com.  (*See generally* (Compl. (Dkt. # 1) ¶ 14.) Specifically, Mr. Olive asserts that in 2019, Ms. Robinson falsely stated on her website, https://irelandrosemarie.wordpress.com,[1] that Mr. Olive had sexually assaulted Kiersten Alexandra Klag, a model Mr. Olive knows.[2]  (*See* FAC ¶¶ 14, 25.)  According to Mr. Olive, Ms. Robinson knew the statement was false and made the statement with the intent to injure Mr. Olive both personally and professionally.  (*See id.* ¶¶ 14-20.)  Ms. Robinson's statement allegedly caused Mr. Olive's reputation, business, and mental health to suffer.  (*See id.* ¶¶ 17-20.)  In this action, he brings claims against Ms. Robinson for defamation and intentional infliction of emotional distress.  (*See generally id.* ¶¶ 24-32.)

This the second case that Mr. Olive has initiated against Ms. Robinson.  In the first case, which was in front of Magistrate Judge Brian A. Tsuchida, Mr. Olive asserted similar claims of defamation and intentional infliction of emotional distress based on Ms. Robinson's alleged publication of defamatory statements on Facebook in 2016.  *See*

---

[1] According to Mr. Olive, Ms. Robinson also uses "Ireland Rose" as an alias and "promotes herself in the online pornography industry under the name of 'Ireland Rose' or 'Ireland Rose Marie.'"  (FAC (Dkt. # 36) ¶ 2.)  Thus, although the website belongs to Ireland Rose Marie, Mr. Olive alleges that Ms. Robinson is the one who owns it.  (*Id.* ¶¶ 2, 14.)

[2] Ms. Klag and Ms. Robinson have both modeled for Mr. Olive.  (FAC ¶¶ 2, 8-9.)  On her website, Ms. Robinson uses the fake name "Norah Jean" when referring to Ms. Klag "out of respect" for her.  (*See id.* ¶ 4); IrelandRoseMarie, *Help Ireland Fight* (Apr. 4, 2019), https://irelandrosemarie.wordpress.com.

FAC, *Olive v. Robinson*, No. C18-0862BAT (W.D. Wash. July 30, 2018), Dkt. # 11.  One

of the allegedly defamatory statements at issue in that case is essentially identical to the

statement at issue here—namely, that Mr. Olive sexually assaulted Ms. Klag.  *See id.*

¶ 10.  During that proceeding, Ms. Robinson filed for bankruptcy and United States

Bankruptcy Court Chief Judge Marc Barreca held a trial to determine whether any of Mr.

Olive's claims against Ms. Robinson were dischargeable in bankruptcy.  *See* Status

Report, *Olive v. Robinson*, No. C18-0862BAT (W.D. Wash. Apr. 17, 2021), Dkt. # 70,

Ex. 1 ("Bankruptcy Claim Discharge Order & Hr. Tr.").  Chief Judge Barreca held, in

pertinent part, that Mr. Olive failed to establish his claim of intentional infliction of

emotional distress, but that he did establish a claim for defamation based on statements

made by Ms. Robinson in the "first Facebook video accusing [Mr. Olive] of sexually

assaulting Ms. Klag."  *See id.* at 8-18.  Chief Judge Barreca permitted Mr. Olive to return

to Magistrate Judge Tsuchida for a determination of actual damages with respect to Mr.

Olive's defamation claim.  *See id.* at 20-23.  Magistrate Judge Tsuchida awarded Mr.

Olive presumed general damages in the amount of $15,000.00 for his defamation claim

against Ms. Robinson.  *See* 7/9/21 Order at 4-5, *Olive v. Robinson*, No. C18-0862BAT

(W.D. Wash. Apr. 17, 2021), Dkt. # 73 (finding that Mr. Olive "failed to show that he

suffered actual damages of $63,203.00 as a result of [Ms. Robinson's] defamatory

Facebook posting").

Mr. Olive amended his complaint on May 3, 2022, to include references to the

findings of Chief Judge Barreca.  (*See generally* FAC; Dkt.)  Although Ms. Robinson

appeared in this action and answered the initial complaint, she failed to answer or

1  otherwise defend against Mr. Olive's amended complaint.  (*See generally* Dkt.; Answer

2  (Dkt. # 9).)  On September 14, 2022, the Clerk granted Mr. Olive's motion for default

3  and entered an order of default against Ms. Robinson.  (9/14/21 Order (Dkt. # 39); Mot.

4  for Default (Dkt. # 38).)

5       Mr. Olive now asks the court to enter a default judgment against Ms. Robinson in

6  the amount of $300,192—$100,000 for emotional distress and $200,192 for loss of

7  income.  (Mot. at 1, 16.)  He also asks the court to enjoin Ms. Robinson "from continuing

8  to publish defamatory false statements as alleged in the [f]irst [a]mended [c]omplaint on

9  any website owned and/or operated by" Ms. Robinson.  (*Id.* at 16.)

10  ### III.   ANALYSIS

11       The court begins by discussing the relevant legal standard governing motions for

12  default judgment before discussing the merits of Mr. Olive's motion.

13  **A.   Legal Standard**

14       If a defendant fails to plead or otherwise defend, the clerk enters the party's

15  default.  Fed. R. Civ. P. 55(a).  Then, upon a plaintiff's request or motion, the court may

16  grant default judgment for the plaintiff.  *Id.* 55(b)(2).  Entry of default judgment is left to

17  the court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

18  Because granting or denying relief is within the court's discretion, a defendant's default

19  does not automatically entitle a plaintiff to a court-ordered judgment.  *Id.*  In exercising

20  its discretion, the court considers seven factors (the "*Eitel* factors"):  (1) the possibility of

21  prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's

22  claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at

1   stake in relationship to the defendant's behavior; (5) the possibility of a dispute

2   concerning material facts; (6) whether default was due to excusable neglect; and (7) the

3   preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782

4   F.2d 1470, 1471-72 (9th Cir. 1986).

5         Generally, default judgment is a two-step process: first, the court determines that

6   a default judgment should be entered; then, it determines the amount and character of the

7   relief that should be awarded. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

8   (9th Cir. 1987). At the default judgment stage, well-pleaded factual allegations in the

9   complaint, except those related to damages, are considered admitted and are sufficient to

10  establish a defendant's liability. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.

11  1977); Fed. R. Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917-18. The court must ensure that

12  the amount of damages is reasonable and demonstrated by the plaintiff's evidence.[3] *See*

13  Fed. R. Civ. P. 55(b); *TeleVideo*, 826 F.2d at 917-18; *LG Elecs., Inc. v. Advance Creative*

14  *Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of

15  [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some

16  evidence to support an award of damages."). And "[a] default judgment must not differ

17

18         [3] Additionally, this court's Local Rules require plaintiffs to support a motion for default
    judgment with:

19
         a declaration and other evidence establishing [the] plaintiff's entitlement to a sum
20       certain. [The] [p]laintiff shall provide a concise explanation of how all amounts
         were calculated, and shall support this explanation with evidence establishing the
21       entitlement to and amount of the principal claim, and, if applicable, any liquidated
         damages, interest, attorney's fees, or other amounts sought. . . .

22  Local Rules W.D. Wash. LCR 55(b)(2).

1  in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P.

2  54(c).

3  **B.    Jurisdiction**

4          "To avoid entering a default judgment that can later be successfully attacked as

5  void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the

6  judgment in the first place." *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  First,

7  there can be no reasonable dispute that the court has subject matter jurisdiction over this

8  matter.  The court has diversity jurisdiction, *see* 28 U.S.C. § 1332(a)(2), over this case

9  because Mr. Olive is a citizen of Florida and Ms. Robinson is a citizen of the State of

10  Washington, and the amount in controversy exceeds $75,000.00 (*see* FAC ¶¶ 1-2, 6,

11  16-22).  Second, the court has personal jurisdiction over Ms. Robinson because she is

12  domiciled in Washington State, was properly served by Mr. Olive, and appeared in this

13  action without challenging personal jurisdiction.  (*See generally id.* ¶ 2; Affs. of Service

14  (Dkt. ## 7, 8); Dkt.); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.

15  1998) (stating that a court may exercise general jurisdiction over a defendant if the

16  defendant is domiciled in the forum state).

17  **C.    Whether the *Eitel* Factors Favor Default Judgment**

18          Default judgment is warranted in this case because, on balance, the *Eitel* factors

19  weigh in favor of such judgment.  The court discusses each factor in turn.

20          1.   Possibility of Prejudice to Plaintiff

21          The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

22  judgment is not entered.  *See PepsiCo, Inc., v. Cal. Security Cans*, 238 F. Supp. 2d 1172,

1    1177 (C.D. Cal. 2002).  Ms. Robinson has demonstrated an unwillingness to participate

2    in this lawsuit given her failure to respond to or otherwise defend against Mr. Olive's

3    amended complaint.  (*See generally* Dkt.)  As a result, Mr. Olive will suffer prejudice if

4    default judgment is not entered because he will "be denied the right to judicial resolution"

5    of his claims and will be "without other recourse for recovery."  *Elektra Entm't Grp. Inc.*

6    *v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005); *Curtis v. Illumination Arts, Inc.*, 33

7    F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("'[P]rejudice' exists where the plaintiff has

8    no 'recourse for recovery' other than default judgment."  (quoting *Philip Morris USA,*

9    *Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003))).  Thus, the first

10   *Eitel* factor weighs in favor of entering default judgment.

11          2.   Substantive Merits and Sufficiency of the Complaint

12          The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

13   and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

14   *PepsiCo*, 238 F. Supp. 2d at 1175.  For these two factors to weigh in favor of default

15   judgment, the complaint's allegations must be sufficient to state a claim for relief.

16   *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this

17   standard when the claims "cross the line from the conceivable to plausible."  *Ashcroft v.*

18   *Iqbal*, 556 U.S. 662, 680 (2009).  At the default judgment stage, the court "takes 'the

19   well-pleaded factual allegations' in the complaint 'as true'"; however, "necessary facts

20   not contained in the pleadings, and claims which are legally insufficient, are not

21   established by default."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir.

22   2007); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

1

*a.  Defamation Claim*

2        To establish a claim for defamation, a plaintiff must show "(1) that the defendant's

3   statement was false, (2) that the statement was unprivileged, (3) that the defendant was at

4   fault, and (4) that the statement proximately caused damages." *Alpine Indus. Computs.,*

5   *Inc. v. Cowles Pub. Co.*, 57 P.3d 1178, 1183 (Wash. Ct. App. 2002); *Duc Tan v. Le*, 300

6   P.3d 356, 363 (Wash. 2013).  "[T]he necessary degree of fault depends on whether the

7   plaintiff is a private individual or a public figure or public official." *Caruso v. Local*

8   *Union 690*, 670 P.2d 240, 245 (Wash. 1983).  If the plaintiff is merely a private

9   individual, a negligence standard of fault applies. *Id.*; *Vern Sims Ford, Inc. v. Hagel*, 713

10  P.2d 736 (Wash. Ct. App. 1986) ("The negligence standard is that the defendant knew or,

11  in the exercise of reasonable care, should have known that the statement was false or

12  would create a false impression in some material respect.").  Actual malice is a

13  heightened standard of fault that applies if the subject person is a public figure or public

14  official. *Duc Tan*, 300 P.3d at 366 ("A defendant acts with malice when he knows the

15  statement is false or recklessly disregards its probable falsity.").  And if a statement is

16  defamatory per se, damages are presumed, and no proof of actual damages is required.

17  *See Canfield v. Clark*, 385 P.3d 156, 162 (Wash. Ct. App. 2016).[4]

18  //

19

20

21  [4] "[W]here no matters of public concern are involved, presumed damages to a private plaintiff for defamation [per se] without proof of actual malice may be available." *Maison de France, Ltd. v. Mais Oui!, Inc.*, 108 P.3d 787, 794 (Wash. Ct. App. 2005).  Additionally, where a statement is defamatory per se and involves a public figure or a matter of public concern,

22  damages may be presumed upon a showing of actual malice. *Vern Sims*, 713 P.2d at 740.

1    Accepting Mr. Olive's factual allegations as true, *DIRECTV*, 503 F.3d at 854, the

2  court finds that Mr. Olive has stated a claim of defamation against Ms. Robinson.  In his

3  amended complaint, Mr. Olive asserts that in 2019, Ms. Robinson made false factual

4  statements on her website, https://irelandrosemarie.wordpress.com,[5] imputing that Mr.

5  Olive had committed a crime—specifically, she stated that Mr. Olive had sexually

6  assaulted Ms. Klag.  (*See* FAC ¶¶ 14, 25.)  According to Mr. Olive, Ms. Robinson knew

7  the statement was false when she published it, as she "admitted to knowingly fabricating"

8  the statement with the intent to "injure [Mr. Olive] personally and professionally."[6]  (*Id.*

9  ¶¶ 14, 16, 20, 25-27.)  Ms. Robinson's defamatory statement was allegedly viewed by

10  many individuals in the photography and modeling business in which Mr. Olive has a

11  career and, as a result, Mr. Olive asserts that he was labeled a "felon" on social media and

12  suffered damage to his reputation and mental health.  (*Id.* ¶¶ 17-19.)

13    Although Mr. Olive, as a private figure,[7] is only required to establish that Ms.

14  Robinson negligently published the defamatory statement, his allegations establish that

15

16    [5] The court considers the contents of Ms. Robinson's website under the incorporation by
reference doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (evaluating the
17  sufficiency of plaintiff's complaint, taking into account the contents of the web pages that
surrounded the web page containing the allegedly defamatory statement).

18    [6] The admissions and findings that Mr. Olive refers to in his amended complaint relate to
the evidence presented to and the findings made by Chief Judge Marc Barreca in relation to Mr.
19  Olive's 2018 defamation case against Ms. Robinson.  (*See* FAC ¶¶ 12, 23 (referencing Mr.
Olive's 2018 defamation case); *id.* ¶¶ 21-23 at (referencing Ms. Robinson's bankruptcy
20  proceeding)); *see also* Bankruptcy Claim Discharge Order & Hr. Tr. at 3-15 (finding, based on,
among other things, Ms. Robinson's own admissions, that Ms. Robinson knew the sexual assault
21  statement was false and published it intending to harm Mr. Olive).

22    [7] Mr. Olive is not a public figure and there is no evidence that Mr. Olive took voluntary
and significant action to become a public person with regard to this controversy.  *See Valdez-*

1    Ms. Robinson acted with actual malice.  (*See* FAC ¶¶ 14, 16-20, 25-27); *see, e.g.*,

2    *Ferguson v. Waid*, No. C17-1685RSM, 2018 WL 6040174, at *8-9 (W.D. Wash. Nov.

3    19, 2018), *aff'd*, 798 F. App'x 986 (9th Cir. 2020) (finding that defendant met both

4    negligence and actual malice standards in his defamation counterclaim by establishing

5    that plaintiff published defamatory statements with knowledge that the statements were

6    false accusations of criminal and unethical conduct).  Moreover, the court finds Ms.

7    Robinson's statement to be defamatory per se because it imputes to him "a criminal

8    offense involving moral turpitude" and is the type of statement that would tend to expose

9    Mr. Olive "to hatred, contempt, ridicule or obloquy" and "injure[] him in his business."

10   *Caruso*, 670 P.2d 240.  Because Ms. Robinson's statement is defamatory per se, Mr.

11   Olive was presumably damaged by Ms. Robinson's defamatory statement.[8]  *See Canfield*,

12   385 P.3d at 162.

13            *b.  Intentional Infliction of Emotional Distress Claim*

14        To state a claim for intentional infliction of emotional distress, a plaintiff must

15   establish the following elements:  "(1) extreme and outrageous conduct, (2) intentional or

16   reckless infliction of emotional distress, and (3) actual result to plaintiff of severe

17   emotional distress."  *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1110 (Wash. 2015)

18

19

20   *Zontek v. Eastmont Sch. Dist.*, 225 P.3d 339, 346 (Wash. Ct. App. 2010); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 352 (1974).

21        [8] Regardless of whether Ms. Robinson's defamatory per se statement involves a matter of public or private concern, presumed damages are available to Mr. Olive because he has

22   established that Ms. Robinson acted with actual malice.  *See Vern Sims*, 713 P.2d at 740; *Maison de France*, 108 P.3d at 794.

1  (quoting *Lyons v. U.S. Bank. Nat. Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014)).  To prove

2  "extreme and outrageous conduct," it is not enough to show that the defendant acted with

3  tortious or criminal intent, intended to inflict emotional distress, or even acted with

4  malice.  *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975).  Rather, the plaintiff must

5  show that the conduct was "so outrageous in character, and so extreme in degree, as to go

6  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

7  intolerable in a civilized community." *Trujillo*, 355 P.3d at 1110 (quoting *Lyons*, 336

8  P.3d at 1151).  The conduct must be such that "the recitation of the facts to an average

9  member of the community would arouse his resentment against the actor and lead him to

10  exclaim 'Outrageous!'" *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (quoting *Reid

11  v. Pierce Cnty.*, 961 P.2d 333, 337 (Wash. 1998)).  Indeed, "[t]he law intervenes only

12  where the distress inflicted is so severe that no reasonable person could be expected to

13  endure it." *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008) (citing

14  Restatement (Second) of Torts § 46 cmt. j, at 77 (Am. Law Inst. 1965)).

15       Mr. Olive alleges that Ms. Robinson's defamatory statement accusing him of

16  sexually assaulting Ms. Klag was "extreme" and "outrageous" and was intended to inflict

17  emotional distress on Mr. Olive.  (FAC ¶¶ 18, 30-31.)  In addition, Mr. Olive alleges that

18  because of Ms. Robinson's allegedly outrageous conduct, he suffers "from depression,

19  fear, nausea, panic attacks, and loss of sleep" and "requires the use of an emotional

20  support animal." (*Id.* ¶¶ 19, 32.)

21       Although Ms. Robinson's statement accusing Mr. Olive of sexually assaulting Ms.

22  Klag imputes Mr. Olive with the commission of a crime, the court declines to conclude

1    that Ms. Robinson's conduct was "so outrageous in character, [and] so extreme in degree,

2    as to go beyond all possible bounds of decency" and to be "utterly intolerable in a

3    civilized community." *Saldivar*, 186 P.3d at 1131 (quoting *Grimsby*, 530 P.2d at 295)

4    (determining that "[f]iling suit alleging sexual abuse by a physician, even with malicious

5    intent," did not constitute extreme or outrageous conduct). The cases where a claim for

6    intentional infliction of emotional distress has been permitted include much more

7    extreme and intolerable facts. *See, e.g.*, *id.*; *Grimsby*, 530 P.2d at 295-96 (finding

8    intentional infliction of emotional distress where, as a result of the defendant doctor's

9    actions, the plaintiff was required to helplessly witness "the terrifying agony and explicit

10   pain and suffering of his wife while she proceeded to die right in front of his

11   eyes . . . because of his inability to secure any medical care or treatment for his wife").

12   Accordingly, Mr. Olive fails to state a claim for intentional infliction of emotional

13   distress.

14       3.  Sum of Money at Stake

15       The fourth *Eitel* factor considers the sum of money at stake in a case "in relation to

16   the seriousness of the defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This

17   factor weighs in favor of default when "the recovery sought is proportional to the harm

18   caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F.

19   Supp. 2d 916, 921 (N.D. Cal. 2010); *see also Emp. Painters' Tr. v. Cascade Coatings*,

20   No. C12-0101JLR, 2014 WL 526776, at *6 (W.D. Wash. Feb. 10, 2014) (concluding that

21   this factor weighed against default because the amount of money requested was

22   unreasonable in light of the loss caused by the defendant's actions).

1    Mr. Olive seeks actual damages in the amount of $300,192, for loss of income and

2    emotional distress, as well as injunctive relief.  (*See* FAC at 7; Mot. at 16.)  In general,

3    default judgment is disfavored if there are large sums of money involved, *Eitel*, 782 F.2d

4    at 1472, and other courts have found requests for similar amounts of money to weigh

5    against the entry of default judgment, *see, e.g.*, *Joe Hand Promotions, Inc. v. Alavardo*,

6    No. 1:10-cv-00907 LJO JLT, 2011 WL 1544501, at *7-8 (E.D. Cal. Apr. 21, 2011)

7    ("Given the substantial amount of money at stake [(up to $110,000)], this factor weighs

8    against the entry of default judgment."); *J&J Sports Prods. v. Cardoze*, No. C 09-05683

9    WHA, 2010 WL 2757106 (N.D. Cal. July 9, 2010) ("[A] large sum of money at stake

10   would disfavor default damages," such as damages totaling $114,200.00).  Moreover, as

11   discussed below, Mr. Olive has failed to provide sufficient evidentiary support for his

12   alleged actual damages.  *See infra* Section III.D.1.  Accordingly, the court cannot

13   conclude that the damages Mr. Olive seeks are "[]reasonable in light of the potential loss

14   caused by the [Ms. Robinson's] actions."  *See Truong Giang Corp. v. Twinstar Tea*

15   *Corp.*, No. 06-CV-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)

16   (concluding that the factor weighed against default because the sum sought was

17   unsupported by evidence in the record).  This factor therefore does not support entry of

18   default judgment.

19       4.  Possibility of a Dispute over Material Facts

20       "The fifth *Eitel* factor considers the possibility of dispute as to any material facts

21   in the case."  *PepsiCo*, 238 F. Supp. 2d at 1177.  Ms. Robinson responded to Mr. Olive's

22   original complaint.  (*See generally* Answer).  But the court cannot consider Ms.

1    Robinson's answer to Mr. Olive's original complaint as a response to the amended

2    complaint.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) ("[A]n

3    amended complaint super[s]edes the original complaint and renders it without legal

4    effect."); *see also Emp. Painters' Tr. v. Ethan Enters.*, 480 F.3d 993, 999-1000 (9th Cir.

5    2007) (finding default judgment proper where defendant failed to answer amended

6    complaint even after filing an answer to original complaint and litigating its

7    counterclaim).  Therefore, because Ms. Robinson never responded to the amended

8    complaint (*see generally* Dkt.), the court must take all well-pleaded allegations in the

9    amended complaint as true, except those related to damages.  *TeleVideo*, 826 F.2d at

10   917-18.  Accordingly, there is nothing to suggest a possible dispute of material facts, and

11   this factor weighs in favor of granting default judgment.

12        5.  Excusable Neglect

13        The sixth *Eitel* factor considers the possibility that the defendant's default resulted

14   from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177 (noting that "the possibility of

15   excusable neglect is remote" where a defendant participated early in a case, but later

16   stopped participating).  Here, there is no indication that Ms. Robinson has defaulted due

17   to excusable neglect.  Although Ms. Robinson appeared in this action, answered the

18   original complaint, and opposed a motion to dismiss her counterclaims, she has not

19   participated in this action since May 2020.  (*See generally* Dkt.)  Indeed, Ms. Robinson

20   has ignored the court's orders directing the parties to file joint status reports, failed to

21   answer the amended complaint, and failed to oppose Mr. Olive's motions for default and

22   //

default judgment.  (*See generally id.*; *see also* 12/11/22 Olive Decl.[9] ¶ 7 ("[Ms.

Robinson] has failed to respond to any correspondence, written or electronic, in over one

year.").[10])  Given Ms. Robinson's early participation in this matter, the court finds that

the possibility of excusable neglect is remote.  *See, e.g.*, *Getty Images (US), Inc. v.*

*Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *5 (W.D. Wash. Jan. 31, 2014)

("The fact that the Camps stopped defending the suit after initially filing a motion to

dismiss suggests that they are aware of the lawsuit and have simply chosen not to defend

it.").  Thus, the sixth *Eitel* factor, too, weighs in favor of default judgment.

    6.  <u>Policy Favoring Decisions on the Merits</u>

        Although there is a preference for deciding cases on the merits, this preference is

not an absolute requirement.  *See Vawter v. Quality Loan Serv. Corp. of Wash.*, No.

C09-1585JLR, 2011 WL 1584424, at *3 (W.D. Wash. Apr. 27, 2011).  Where, as here,

the defendant's "failure to answer [a c]omplaint makes a decision on the merits

impractical, if not impossible," the "preference to decide cases on the merits does not

preclude [t]he court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177.

Because Ms. Robinson's failure to answer Mr. Olive's amended complaint makes

//

---

[9] Mr. Olive's declaration appears on pages 18 and 19 of his motion for default judgment, and the exhibits to his declaration appear on pages 20 through 25 of his motion.  (*See* Mot. at 18-19; *see also id.* at 20-25.)

[10] The amended complaint was mailed to Ms. Robinson's last known address, and Mr. Olive notified Ms. Robinson of his intent to move for entry of default by sending first class mail to Ms. Robinson's last known address.  (*See* 12/11/22 Olive Decl. ¶¶ 4-5; 5/14/22 Clerk Letter (Dkt. # 37) (noting that the amended complaint was returned as undeliverable).)

1   adjudication on the merits impossible, the court concludes that the seventh *Eitel* factor

2   also favors entry of default judgment.

3          In sum, the court concludes that on balance, the *Eitel* factors weigh in favor of

4   entry of default judgment in favor of Mr. Olive on his defamation claim.  The court

5   therefore GRANTS default judgment on Mr. Olive's defamation claim.

6   **D.  Damages and Injunctive Relief**

7          The court now turns to the issue of remedies.  The court does not presume the

8   truth of any factual allegations related to the amount of damages.  *TeleVideo*, 826 F.2d at

9   917-18.  As a result, Mr. Olive is required to present evidence to "prove up" the damages

10  that he is seeking.  *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049,

11  1053-54 (C.D. Cal. 2011); Fed. R. Civ. P. 55(b); Local Rules W.D. Wash. LCR 55(b)(2).

12  In this instant motion, Mr. Olive's requests for $300,192 in actual damages and

13  permanent injunctive relief.[11]  (*See* Mot. at 1, 16.)

14          1.  Damages

15          To substantiate his request for $200,192 in actual damages for loss of income

16  (Mot. at 15-16), Mr. Olive submitted his business, Shutter Fun Photography LLC's,

17  federal Form 8879-S for the 2020 tax year and federal Forms 8879-S and 1120S for the

18

19

20  [11] This relief does not differ from the forms of relief requested in his amended complaint.
   (*See* FAC at 7 (seeking injunctive relief and general and actual damages, in an amount to be
   proven at trial, for loss of income and pain and suffering)); Fed. R. Civ. P. 54(c) ("A default
21  judgment must not differ in kind from, or exceed in amount, what is demanded in the
   pleadings."); *see also Henry v. Sneiders*, 490 F.2d 315, 317, 317 n.2 (9th Cir. 1974) (noting that
   a plaintiff need not specify an exact amount in his complaint in order to comply with Rule
22  54(c)'s requirement and prevail on a motion for default judgment).

2021 tax year.  (12/11/22 Olive Decl. ¶¶ 8-9, Exs. 1-2.)  Mr. Olive contends that these

forms reflect that he lost income to his photography business due to the 2019 post on Ms.

Robinson's website in the amount of $200,192.  (*Id.* ¶¶ 8-9.)  To arrive at this figure, Mr.

Olive simply subtracted his 2021 gross receipts from his 2020 gross receipts

($349,047 - $148,855 = $200,192).  (*Id.*)

      There are several defects in this rationale and the evidence submitted.  First, the

forms Mr. Olive submitted merely summarize the tax return information and do not allow

for an accurate comparison of Mr. Olive's business income and/or losses for the years in

question.  (*See* 12/11/22 Olive Decl., Ex. 2 (federal signature authorization form and

federal income tax return for 2021[12]); Ex. 1 (federal signature authorization form for

2020).[13])  Second, Mr. Olive's calculation does not consider that, for any decrease in

gross receipts caused by a cancelled photoshoot, Mr. Olive would have also saved his

business expenses related to that photoshoot.  In fact, a comparison of Mr. Olive's gross

profits (which accounts for business expenses), reflects a loss of only $46,709.00

($105,409 (in 2020) – $58,700 (in 2021) = $46,709).  (*Id.*, Exs. 1-2.)  Third, Mr. Olive

has failed to sufficiently establish that his business losses, or some portion of them, were

attributable to Ms. Robinson's defamatory statement rather than some other superseding

event.  (*See generally* Mot.; 12/11/22 Olive Decl.)  For example, the period during which

---

[12] Additionally, the copy of the Form 1120-S for 2021 appears to be incomplete.  (*See* 12/11/22 Olive Decl., Ex. 2 at 2.)

[13] The Form 8879-S is an e-file signature authorization for the Form 1120-S tax return and does not identify Mr. Olive's business losses.  (*See, e.g.*, 12/11/22 Olive Decl., Ex. 1.)

1    Mr. Olive allegedly lost income due to Ms. Robinson's website post overlaps with the

2    COVID-19 pandemic, which involved lockdowns and other restrictions throughout the

3    United States.[14]   In sum, the tax information proffered by Mr. Olive does not show that

4    his business lost income of $200,192 (or any other amount) as a result of the defamatory

5    statement that Ms. Robinson posted on her website in 2019.  *See TeleVideo*, 826 F.2d at

6    917-18 (stating that the court must ensure that the amount of damages is reasonable and

7    demonstrated by the plaintiff's evidence); *see also* Local Rules W.D. Wash. LCR

8    55(b)(2) ("Plaintiff must support a motion for default judgment with a declaration and

9    other evidence establishing plaintiff's entitlement to a sum certain and to any

10   nonmonetary relief sought.").

11           Turning to Mr. Olive's request for $100,000 in actual damages for emotional

12   distress, Mr. Olive alleges that, due to Ms. Robinson's conduct, Mr. Olive suffered

13   extreme emotional distress.  (*See* Mot. at 16; FAC ¶¶ 19, 32.)  Mr. Olive ties his request

14   for $100,000 in emotional distress damages to his intentional infliction of emotional

15   distress claim.  (*See* Mot. at 16; FAC at 7.)  However, the court has concluded that he

16   fails to state a claim for intentional infliction of emotional distress, *see supra* Section

17   III.C.2.b, and as such, no damages will be awarded in association with that claim.[15]

18

19   [14] Additionally, although Ms. Robinson created the defamatory website post in 2019, Mr.
     Olive does not offer any evidence of his income before her post, which further limits the court's
     ability to determine whether Ms. Robinson's conduct played some role in his loss of income.

20

21   [15] Even if Mr. Olive had instead sought emotional distress in relation to his defamation
     claim, the court could not award them without evidence of Mr. Olive's alleged emotional distress
     damages.  *See Cagle v. Burns & Roe, Inc.*, 726 P.2d 434, 438 (Wash. 1986) (stating that

22   "damages for emotional distress are recoverable as an element of damages merely upon proof of
     'an intentional tort'"; however, plaintiff must prove emotional distress to recover the damages

1           Although Mr. Olive has not sufficiently proved any actual damages to his himself

2    or his business, he is entitled to presumed general damages because Ms. Robinson's

3    statement was defamatory per se. *See supra* Section III.C.2.a; *see, e.g.*, *Waechter v.*

4    *Carnation Co.*, 485 P.2d 1000, 1005 (Wash. Ct. App. 1971) (upholding jury award of

5    $25,000.00 for numerous defamatory per se statements); *Ferguson*, 2018 WL 6040174, at

6    *8 (awarding $50,000 in presumed general damages for repeated publication of

7    defamatory per se statements). Here, the court AWARDS Mr. Olive presumed general

8    damages in the amount of $25,000. This award is based on the presumed impact of the

9    defamatory statement on Mr. Olive's business, the presumed mental anguish associated

10   with being falsely accused of a crime, and the fact that this is Ms. Robinson's second

11   time falsely accusing Mr. Olive of sexually assaulting Ms. Klag. *See* 7/9/21 Order at 5,

12   *Olive v. Robinson*, No. C18-0862BAT (W.D. Wash. July 9, 2021), Dkt. # 73 (awarding

13   $15,000 in presumed general damages for Ms. Robinson's 2016 defamatory per se

14   statement accusing Mr. Olive of sexually assaulting Ms. Klag).

15   //

16   //

17

18   attributable to the wrongful act); *Dean v. Metro. Seattle*, 708 P.2d 393, 400-01 (Wash. 1985)
     (requiring plaintiff to offer proof of actual anguish or emotional distress in order to have those

19   damages included in recoverable costs"). Here, Mr. Olive has failed to submit any evidence of
     his alleged emotional distress in support of the instant motion or demonstrate any basis for

20   emotional distress damages in his supporting declaration. (*See generally* Mot.; 12/11/22 Olive
     Decl.); *see also LG Elecs.*, 212 F. Supp. 2d at 1178 ("[T]he evident policy of [Rule 55(b)] is that

21   even a defaulting party is entitled to have its opponent produce some evidence to support an
     award of damages."). Regardless, Mr. Olive does not even attempt to establish that his alleged

22   emotional distress is attributable to Ms. Robinson's defamatory statement. (*See generally* Mot.;
     12/11/22 Olive Decl.)

1       2.  Injunctive Relief

2           Mr. Olive asks the court to permanently "enjoin[] [Ms. Robinson] from continuing

3   to publish defamatory false statements as alleged in the [amended complaint] on any

4   website [that she] own[s] and/or operate[s]."  (Mot. at 16.)  In addition to showing

5   success on the merits, to obtain a permanent injunction, the moving party must show:

6   (1) irreparable harm; (2) the lack of adequate remedies at law; (3) the balance of

7   hardships weighs in its favor; and (4) the injunction is in the public's interest.  *eBay Inc.*

8   *v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  The court's "decision to grant or deny

9   permanent injunctive relief is an act of equitable discretion."  *Id.*

10          Mr. Olive fails to establish his entitlement to the requested injunctive relief for a

11  number of reasons.  First, Mr. Olive fails to submit evidence that establishes that he will

12  be irreparably harmed absent injunctive relief.  *See, e.g.*, *Lyden v. adidas Am., Inc.*, No.

13  3:14-CV-01586-MO, 2015 WL 758642, at *3-4 (D. Or. Feb. 20, 2015) ("Although lost

14  business opportunities can at times be irreparable, Mr. Lyden has not made any

15  arguments or produced any evidence to support his position that his lost business

16  opportunities are irreparable."); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736

17  F.3d 1239, 1251 (9th Cir. 2013) (requiring an evidentiary showing "sufficient to establish

18  a likelihood of irreparable harm"); *see also San Miguel Pure Foods Co. v. Ramar Int'l*

19  *Corp.*, 625 F. App'x 322, 327 (9th Cir. 2015) ("[E]vidence of irreparable injury . . . is

20  necessary to obtain a permanent injunction.").  The showing of irreparable harm must be

21  //

22  //

1  "grounded in . . . evidence," not conclusory statements or speculation.[16]  *Herb Reed*, 736

2  F.3d at 1250; *see, e.g.*, *Apple Inc. v. Pystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal.

3  2009) ("[H]arm to . . . reputation and goodwill, supported by compelling evidence, is

4  sufficient to establish irreparable harm.").

5        Second, Mr. Olive does not explain why money damages are inadequate to remedy

6  any harm he suffers as a result of future defamatory statements, and the general rule is

7  that "equity does not enjoin a libel or slander and that the only remedy for defamation is

8  an action for damages," *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*,

9  137 F.3d 1090, 1092 (9th Cir. 1998) (quoting *Cmty. for Creative Non-Violence v. Pierce*,

10  814 F.2d 663, 672 (D.C. Cir. 1987)).  *See, e.g.*, *Lyden*, 2015 WL 758642, at *3-4

11  ("[R]eputational harm, particularly defamation, is also commonly remedied through

12  money damages.  Mr. Lyden has failed to explain or to produce evidence that suggests he

13  is suffering the type of reputational harm that cannot be remedied through an award of

14  money damages.").  Finally, the court notes that "the longstanding rule [is] that

15  injunctions of speech in defamation cases are impermissible under the First Amendment"

16  because "[i]njunctions against any speech, even libel, constitute prior restraints:  they

17  'prevent[ ] speech before it occurs,' by requiring court permission before that speech can

18

19  [16] Additionally, given that Ms. Robinson created the defamatory post on her website in
   April 2019 and has not posted on her website since, it appears unlikely that Ms. Robinson's
20  wrongful conduct continued after Mr. Olive initiated this action or will continue in the future.
   *See, e.g.*, *Coffee v. Stolidakis*, No. 221CV02003ARTEJY, 2022 WL 2533535, at *8 (D. Nev.
21  July 6, 2022) (declining to find irreparable harm was likely absent injunctive relief because
   plaintiff had not shown that defendant continued or was likely to continue to make defamatory
22  statements).  The court also notes that the 2019 post was made in relation to Mr. Olive's first
   lawsuit against her and her subsequent bankruptcy proceeding, both of which have long since
   ended.

1    be repeated." *Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1089-93 (C.D. Cal.

2    2012) (quoting Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L.

3    Rev. 157, 163 (2007)) (stating that prior restraints are presumptively unconstitutional and

4    discussing why courts traditionally do not issue injunctions against speech that the court

5    has held to be defamatory).  Although that is not to say that an injunction may never be

6    permitted in a defamation case, the court has concerns regarding the issuance of a

7    permanent injunction in this case given the strong presumption against its

8    constitutionality.  Accordingly, Mr. Olive has not met his burden of demonstrating

9    entitlement to permanent injunctive relief and the court DENIES his request for

10   permanent injunctive relief.

11                              **IV.    CONCLUSION**

12         For the foregoing reasons, the court GRANTS IN PART Mr. Olive's motion for

13   default judgment (Dkt. # 42).  The court GRANTS default judgment in Mr. Olive's favor

14   on his defamation claim against Ms. Robinson and AWARDS Mr. Olive presumed

15   general damages in the amount of $25,000.  The court DENIES default judgment as to

16   Mr. Olive's claim against Ms. Robinson for intentional infliction of emotional distress,

17   DISMISSES his intentional infliction of emotional distress claim, and DENIES his

18   requests for actual damages related to business loss and emotional distress.

19   //

20   //

21   //

22   //

ORDER - 22

1    Dated this 20th day of January, 2023.

2

3

4                                                    JAMES L. ROBART
                                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 23